UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MEDIDATA SOLUTIONS, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**DATATRAK INTERNATIONAL, INC.**<br><br>**Defendant.** | Civ. No. 12-4748 (WJM)<br><br>**OPINION** |

<u>**WILLIAM J. MARTINI, U.S.D.J.**</u>:

This matter comes before the Court on Defendant DATATRAK International, Inc.'s ("DATATRAK's") motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, to transfer this matter to the Northern District of Ohio pursuant to 28 U.S.C. § 1404. Plaintiff Medidata Solutions Inc. ("Medidata") opposes the motion. For the reasons set forth below, DATATRAK's motion is **GRANTED in part** and **DENIED in part**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts relevant to resolution of this motion are largely undisputed: Medidata is a Delaware corporation whose corporate headquarters are located in New York. DATATRAK is an Ohio corporation with a place of business in Ohio. Both parties conduct business in New Jersey.

At the outset, it is important to note that presently, Defendant DATATRAK owns the rights to two United States patents: (1) U.S. Patent No. 7,464,087, issued by the

1

United States Patent and Trademark Office (the "USPTO") on December 9, 2008 (the "'087 Patent"); and U.S. Patent No. 8,234,294, issued by the USPTO on July 31, 2012 (the "'294 Patent").

As explained by Medidata, "[the '294 Patent] is a 'continuation' of the '087 Patent, meaning that it shares the same specification and pertains to the same subject matter and technology as the '087 Patent."  (Def.'s Opp. Br. 4, ECF No. 28.)  For purposes of the present Opinion, it is sufficient to further note: (1) that Medidata asserts that the '087 and '294 Patents are "very closely related" [1] (*Id*.); (2) that DATATRAK does not challenge – and in fact appears to agree with – that statement; [2] and (3) that the Court's independent review of both patents further confirms that Medidata's characterization is accurate.

<u>The Parties' Prior Patent Infringement Litigation as to the '087 Patent</u>

Bearing that in mind, on March 4, 2011, DATATRAK initiated a patent infringement action against Medidata in the United States District Court for the Northern District of Ohio at No. 1:11-cv-458, *DATATRAK International, Inc. v. Medidata Solutions, Inc.*, stemming from Medidata's alleged infringement of DATATRAK's rights in the earlier-issued '087 Patent (the "Ohio Litigation").  The Ohio Litigation was stayed on December 16, 2011, pending an *ex parte* reexamination of the '087 Patent (the "Reexamination Process").

---

[1] Medidata correctly notes that the two patents share the same title, specification, and inventors.  Medidata further alleges that the '294 Patent is subject to a terminal disclaimer that was filed to overcome a double patenting rejection issued by the USPTO in view of the '087 Patent.  (Compl. ¶ 16.)
[2] Although Defendant asserts that the two patents differ to the extent they are directed to two distinct inventions, (Def.'s Br. in Supp. of Mot. 4, ECF No. 27), DATATRAK also indicates that the patents are related and that several terms of the '294 Patent are common to the claims of the '087 Patent.  (*Id*. at 16.)

Subsequently, on December 31, 2011 and March 31, 2012, DATATRAK made public statements evincing its intent to resume vigorous prosecution of its claims against Medidata at the conclusion of the Reexamination Process.  (Compl. ¶¶ 18-20.)

<u>The Parties' Present Patent Infringement Litigation as to the '294 Patent</u>

Thereafter, on July 31, 2012 – during the pendency of the Reexamination Process and the presently-stayed Ohio Litigation – the USPTO issued the '294 Patent.  On that same day, [3] Medidata initiated the present action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking declarations: (1) that Medidata "has not infringed and does not infringe any valid claim of the '294 [P]atent" (Compl., First Count); and (2) that the claims of the '294 Patent are invalid "for failure to comply with one or more of the requirements of patentability . . . , including without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112." (Compl., Second Count).

In response, DATATRAK filed the present motion, asserting that Medidata's Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim, and, alternatively, that this matter should be transferred to the Northern District of Ohio pursuant to 28 U.S.C. § 1404.

## II.  DISCUSSION

### A.  Lack of Subject Matter Jurisdiction

DATATRAK first moves to dismiss Medidata's Complaint under Rule 12(b)(1),

---

[3] More precisely, Medidata filed the present Complaint on July 1, 2013 at 12:03 a.m.  For substantially the same reasons set forth in *Cerro Wire Inc. v. Southwire Co.*, 777 F.Supp.2d 1334 (N.D. Ga. 2011), the Court finds that Medidata's filing occurred after the '294 Patent was issued.  *See Cerro* at 1336, 1338 (agreeing that "patents are not issued at a particular time, but only on a particular day, and therefore, that a declaratory judgment plaintiff in a patent case may file suit at any time on the day the patent issues, beginning with the moment immediately after midnight").  *See also D2L Ltd. v. Blackboard, Inc.*, 671 F.Supp.2d 768, 774 n. 3 (D. Md. 2009) (finding that declaratory judgment complaint filed at 12:01 a.m. on day patent issued to be timely filed).

3

based on its assertion that Medidata has failed to establish the existence of an actual case or controversy sufficient to confer this Court with jurisdiction under Article III of the Constitution. (Def.'s Br. in Supp. of Mot. to Dismiss 5, ECF No. 27.)

As an initial matter, the Court notes, <u>first</u>, that because DATATRAK's motion "calls into question the essential facts underlying a claim of subject matter jurisdiction," *Med. Soc'y of N.J. v. Herr*, 191 F.Supp.2d 574, 578 (D.N.J. 2002), the Court "may consider evidence outside the pleadings." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

<u>Second</u>, that Medidata brought this action under the Declaratory Judgment Act ("DJA"), which states: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

<u>Third</u>, that jurisdiction under the DJA is restricted by Article III of the Constitution to the adjudication of "Cases" or "Controversies." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (the DJA's "requirement of a 'case of actual controversy' simply [acknowledges] this Constitutional requirement") (citing U.S. Const. art. III, § 2) (hereinafter, "Article III Jurisdiction").

And <u>fourth</u>, that Medidata bears the burden of establishing that the Court has Article III Jurisdiction. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006); *Med. Soc'y of N.J.*, 191 F.Supp.2d at 578.

    **i.    Article III Jurisdiction**

For purposes of determining Article III Jurisdiction, the Court considers whether

"the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted). "[T]here is no bright-line rule for determining whether an action satisfies [this] requirement." *Id*. *See also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably [patent-infringing] behavior or abandoning that which he claims a right to do [based on his belief that his activity does not infringe on that patent.]").

For purposes of determining whether the Court has Article III Jurisdiction under *Medimmune's* "all the circumstances" standard, it is appropriate for the Court to consider: (1) whether there has been prior litigation between the parties on related patents; and (2) whether the declaratory judgment defendant has indicated that it will protect its arguable patent rights against the declaratory judgment plaintiff. *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357-58 (Fed. Cir. 2013). *See also Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1344-45 (Fed. Cir. 2007) ("related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents").

### ii. Application

In this case, it is undisputed: that DATATRAK presently owns the rights to the '087 and '294 Patents; that DATATRAK has already initiated a patent infringement

5

action against Medidata in the Northern District of Ohio based on Medidata's alleged infringement of the '087 Patent; that after the Ohio Litigation was stayed as a result of a reexamination of the '087 Patent, DATATRAK stated publically on at least two occasions that it intends to resume its vigorous prosecution against Medidata when that stay is lifted; that the USPTO thereafter issued the '294 Patent; and that the '087 and '294 Patents share the same specification, pertain to the same subject matter and technology, and are otherwise "very closely related."

In light of these facts, and when considering the foregoing principles, the Court finds that based on the totality of the circumstances, Medidata has established the existence of an actual case or controversy sufficient to confer this Court with Article III Jurisdiction. Accordingly, DATATRAK's motion to dismiss pursuant to Rule 12(b)(1) will be **DENIED**. *See Arkema*, 706 F.3d at 1357 (Article III Jurisdiction established where, among other things, defendant made it clear that it would protect its patent rights against any activity by plaintiff which allegedly infringed on those rights and defendant already asserted claims against plaintiff for infringement of other patents covering the same technology); *D2L Ltd. v. Blackboard, Inc.*, 671 F.Supp.2d 768, 775-77 (D. Md. 2009) (Article III Jurisdiction established where plaintiff filed declaratory judgment action on newly-issued patent, defendant previously sued plaintiff for infringement of two other patents covering the same technology, and defendant implied that it would sue on the newly issued patent during settlement negotiations between the parties).

### B. Failure to State a Claim

DATATRAK next moves to dismiss under Rule 12(b)(6) for failure to state claim upon which relief can be granted, based on its assertion that Medidata's Complaint contains insufficient facts demonstrating Plaintiff's entitlement to a declaration of its non-infringement of, or the overall invalidity of, the '294 Patent.

In addressing DATATRAK's Rule 12(b)(6) motion, the Court notes, first, that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. [However,] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). And thus, a motion to dismiss for failure to state a claim should be granted only if the party asserting the claim is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Second, that DATATRAK – as the party moving under Rule 12(b)(6) – bears the burden of establishing that dismissal for failure to state a claim is appropriate. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Third, that the District of New Jersey's Local Patent Rules – including Local Patent Rules 3.1, which governs disclosure of asserted claim and infringement

7

contentions, and 3.3, which governs disclosure of invalidity contentions – are applicable in this matter.

Fourth, that because "[t]he crux of *Twombly* and *Iqbal* is to ensure that the defendant . . . has fair notice of what is being pled," *Elan Pharma Int'l Ltd. v. Lupin Limited*, Civ. No. 09-1008 (JAG), 2010 WL 1372316, at *5 (D.N.J. Mar. 31, 2010), and in light of New Jersey's Local Patent Rules, in order for Medidata's Complaint to survive the present Rule 12(b)(6) motion to dismiss, Medidata is not required to plead facts to the same level of specificity at the pleadings stage that it will be required to do as this patent litigation progresses. *Elan Pharma Int'l Ltd. v. Lupin Limited*, Civ. No. 09-1008 (JAG), 2010 WL 1372316, at *5-6 (D.N.J. Mar. 31, 2010) (considering how the disclosure requirements set forth in the Local Patent Rules adopted by the District of New Jersey on January 1, 2009 affect application of the threshold pleading requirements set forth in *Iqbal* and *Twombly* to patent actions initiated in the District of New Jersey).

### i. Application

Under this standard, and for substantially the same reasons set forth in *Elan Pharma*, Medidata's Complaint pleads sufficient facts demonstrating its entitlement to the relief sought in the present patent infringement action. *See Elan* (defendant's counterclaims asserting that three patents were "invalid under one or more provisions of 35 U.S.C. §§ 101-105" – which were pled in a nearly identical manner to Plaintiff Medidata's present claims – sufficiently pled to withstand Rule 12(b)(6) motion to dismiss). Accordingly, DATATRAK's motion to dismiss pursuant to Rule 12(b)(6) will be **DENIED**.

8

### C.  DATATRAK's Motion to Transfer Venue

Finally, DATATRAK moves, in the alternative, to transfer this action to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).  Section 1404 provides this Court with broad discretion to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses."  28 U.S.C. § 1404(a).  *See also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).  Section 1404(a) is meant "to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses. . . .'"  *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In addressing DATATRAK's Section 1404 motion, the Court notes, first, that DATATRAK, as the moving party, bears the burden of establishing: (1) that the proposed transferee forum is one in which the case "might have been brought"; [4] and (2) that, in the interest of justice, the proposed transferee forum is more convenient for the parties and witnesses.  *See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F.Supp.2d 637, 643 (D.N.J. 2004) (citations omitted).

Second, that while the transfer statute expressly identifies certain criteria for a court to consider – convenience of parties, convenience of witnesses, and the interests of justice – the Third Circuit has articulated a more comprehensive list of public and private concerns implicated by Section 1404(a).  Private concerns include:  plaintiff's original

---

[4] Medidata acknowledges that the Northern District of Ohio would also be an appropriate venue for this action. (Def.'s Br. 18, ECF No. 28).  *See also* 28 U.S.C. § 1391(b) (venue is appropriate in a judicial district where (1) any defendant resides or (2) the claim arose).

choice of venue; defendant's forum preference; where the claim arose; convenience to the parties in light of their financial and physical condition; availability of witnesses in each of the fora; and the location of evidence. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir.1995). Public concerns include, among others, the practical considerations that would make trial more expeditious or inexpensive. *Id*.

Third, that in that regard, the Court may properly consider whether there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 751 (D. Del. 2012). *See also Mallinckrodt v. E-Z Em Inc.*, 670 F.Supp.2d at 357–58 (D. Del. 2009) (interests of justice support transfer where related litigation in a transferee forum involved same parties, similar technologies, and a common field of prior art) (citing *Cashedge, Inc. v. Yodlee, Inc.*, C.A. No. 06–170–JJF, 2006 WL 2038504, at *2 (D. Del. Jul. 12, 2006). *See also Avaya v. Mitel Newtorks Corp.*, 460 F.Supp.2d 690, 692 (E.D. Va. 2006) ("the prospect of having two or more courts construe the same, or essentially similar, claim terms in the same or related patents may well warrant transfer.") (citing *In re Medrad, Inc*, 215 F.3d 1341 (Fed. Cir. 1999)).

And fourth, that although "the plaintiff's choice of venue should not be lightly disturbed," ultimately, the Court considers "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879; *see also Clark v. Burger King Corp.*, 255 F.Supp.2d 334, 337 (D.N.J. 2003). This analysis is flexible and

10

must be made on the unique facts of each case. *Calkins v. Dollarland, Inc.*, 117 F.Supp.2d 421, 428 (D.N.J. 2000).

### i. Application

When applying the foregoing considerations to the facts in this case, the Court finds that transfer of this action to Northern District of Ohio is appropriate. First, it is undisputed that there is an earlier filed patent infringement action presently pending in the Northern District of Ohio that involves the same parties, similar technologies, and a common field of prior art. In fact, as explained by Medidata, the '294 Patent which is at issue in this case "is a 'continuation' of the '087 Patent, meaning that it shares the same specification and pertains to the same subject matter and technology as the '087 Patent." (Def.'s Opp. Br. 4.)

Second, that in light of these similarities, the Court's failure to transfer the present matter creates the very real possibility that two courts will construe the same, or essentially similar, claim terms in the related '294 and '087 Patents. The fact that the Ohio Litigation is in the early stages of litigation and is presently stayed has no bearing on that ultimate reality.

Third, that although Medidata indicates that it has substantial connections to this forum, including an office located in Edison, New Jersey, which employs one-fourth of its domestic work force, and a significant revenue stream derived from sales to customers in this state, (Pl.'s Opp. Br. 20-21), Medidata is neither incorporated in New Jersey, nor does it have its principle place of business here.

Fourth, that similarly, and in spite of Medidata's assertions that DATATRAK's connections to this forum are also substantial in light of DATATRAK's corporate clients located in this state and at least one "collaborative initiative" with a contract research organization located in New Jersey, (*Id*. at 20-21), in reality DATATRAK is an Ohio corporation with its principle place of business in that state.

And fifth, although Medidata indicates that New Jersey is the most convenient forum for both parties' witnesses because a substantial number of witnesses reside in New Jersey, New York, and Germany, this assertion disregards the undisputed fact that a substantial number of witnesses are also residents of Ohio. (*Id*. at 21-24.)

In short, based on these considerations, the Court agrees with DATATRAK that transfer of this action to the Northern District of Ohio will promote efficiency and justice by avoiding inconsistent claim constructions, inconsistent judgments, and duplication of efforts, particularly in light of this action's otherwise limited connections to New Jersey.

Accordingly, the Court finds that DATATRAK has established that transfer to the Northern District of Ohio pursuant to Section 1404(a) is appropriate, and DATATRAK's motion to transfer will be **GRANTED**. *See COA Network, Inc. v. J2 Global Communications, Inc.*, Civ. No. 09-6505, 2010 WL 2539692 at *6 (D.N.J. Jun. 17, 2010) (finding transfer to Central District of California in interests of justice appropriate in light of the "overarching mandate to avoid inconsistent claim construction in patent cases" and based on already-pending and related patent actions); *D2L Ltd.*, 671 F.Supp.2d at 784 (D. Md. 2009) (transfer of declaratory judgment action concerning subsequently-issued

12

patent appropriate where prior patent litigation in the Eastern District of Texas concerned two patents involving the "same inventors, drawings, and specification").

### III. CONCLUSION

For the reasons stated above, Defendant DATATRAK's motion to dismiss under Rules 12(b)(1) and 12(b)(6) motion is **DENIED**. DATATRAK's motion to transfer this action to the Northern District of Ohio is **GRANTED**. An appropriate order follows.

/s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 10, 2013.**